## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| LUCIANO MENDOZA-GARCIA, | |
| Petitioner | Civil No. 20-1485 (ADC-GLS) |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## REPORT AND RECOMMENDATION

Luciano Mendoza-García ("Petitioner") has moved to vacate, set aside or correct his sentence pursuant to Section 2255 of Title 28 of the United States Code ("Section 2255"). Following a jury trial, Petitioner was convicted of conspiracy to import controlled substances, conspiracy to possess controlled substances on board a vessel subject to the jurisdiction of the United States, possession of controlled substances on board a vessel subject to the jurisdiction of the United States and aiding and abetting. Crim. No. 16-656 (ADC) at Docket No. 77. The U.S. Court of Appeals for the First Circuit affirmed the conviction on all counts. U.S. v Mendoza-García, App. No. 17-1864 (1st Cir. 2019). Petitioner claims that he was denied effective assistance of counsel at his trial and on appeal. For the following reasons, the Court recommends that Petitioner's motion be **DENIED**.

### I.    Standard of Review

Section 2255 establishes that a district court can grant relief to a prisoner in custody who was sentenced by a federal district court "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack […]". 28 U.S.C. § 2255(a). A motion under Section 2255 does not substitute a direct appeal and a petitioner must demonstrate cause and actual prejudice. U.S. v. Frady, 456 U.S. 152, 167 (1982). "[T]o obtain collateral relief based on trial errors to which

1

no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id. at 167-8. Once a defendant has exhausted or waived his opportunity to appeal, there is a presumption that he was fairly convicted. Id. at 164. However, "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." Massaro v. U.S, 538 U.S. 500, 509 (2003).

In order to make an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that this resulted in prejudice. Peralta v. U.S., 597 F.3d 74, 79 (1st Cir. 2010). The U.S. Supreme Court developed a two-pronged test to evaluate claims of ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 687 (1985). The petitioner must first demonstrate that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." Id. at 686. The Court must be convinced that an attorney acted in a manner which was objectively unreasonable. Alicea-Torres v. U.S., 455 F.Supp.2d 32, 43 (D.P.R. 2006). Second, a petitioner must demonstrate that there "is a reasonable possibility that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694. Claims of ineffective assistance of appellate counsel are also measured under the Strickland test. Evitts v. Lucey, 469 U.S. 387, 395 (1985).

## II. Discussion

### A.  Failure to file motion to suppress and to object to leading question.

Petitioner alleges that his Sixth Amendment right to effective representation was infringed because counsel failed to file a pre-trial motion to suppress a non-Mirandized statement and failed to object to the introduction of that same statement at trial when elicited through a leading question on direct examination. Docket No. 2. Neither argument supports a finding of ineffective assistance of counsel.

Petitioner cites to the following excerpt of the trial transcript:

Q. Again, what two questions did you ask him?

A. I asked him who the master of the vessel was and where the vessel was flagged from.

Q. And how did he respond?

A. He told me that he did not know who the master of the vessel was and that the vessel was flagged from the Dominican Republic.

Q. Did he tell you anything else?

A. Yes. He told me also that he was approached by a man named Ricky to take some narcotics.

Q. Did you ask him this in the Spanish or English language?

A. I asked him in Spanish.
Crim. No. 16-656 at Docket No. 90, p. 127, lines 6-18. See also Docket No. 2 at 14-15.

The U.S. Supreme Court has established that law enforcement must give Miranda warnings to a suspect prior to a custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 474 (1966). The pertinent inquiry is whether the suspect was in custody and whether he was subject to interrogation. To determine whether the suspect was in custody and therefore entitled to Miranda warnings, the court evaluates the following factors: "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." United States v. Lanni, 951 F.2d 440, 442 (1st Cir. 1991) (quoting U.S. v. Masse, 816 F.2d 805, 809 (1st Cir. 1987)) (citations omitted). In the maritime setting, additional considerations apply. The Maritime Drug Law Enforcement Act ("MDLEA") allows the United States to conduct drug law enforcement outside of the United States and to exercise jurisdiction over stateless vessels. United States v. Bravo, 489 F.3d 1, 4 (1st Cir. 2007). The statute grants the United States Coast Guard the authority to hail and board unidentified vessels to ascertain nationality. U.S. v. Sarmiento-Palacios, 885 F.3d 1, 7 at n.2 (1st Cir. 2018) (quotation omitted). As such, routine Coast Guard boarding of vessels does not automatically create a custodial situation triggering rights under Miranda. United States v. Vilches-Navarrete, 523 F.3d 1, 15 (1st Cir 2008) (quoting United States v. Baker, 641 F.2d 1311, 1319 (9th Cir.1981)); United States v. Elkins, 774 F.2d 530, 535 at n. 3 (1st Cir.1985) ("It is well recognized that a routine inspection and boarding of an American flagship vessel on the high seas does not give rise to a custodial detention.").

Petitioner in this case was on board a *yola* with codefendant Jorge Balbuena-Peguero when they were stopped by federal agents. The evidence established that the vessel was intervened in international waters about sixty-one miles from Puerto Rico when defendants began throwing cocaine overboard. United States v. Balbuena-Peguero, 2017 WL 1399696, 1 (D.P.R.). Customs and Border Patrol were in pursuit of the *yola* and used chemical lights to mark the location of the drugs which were later retrieved by the Coast Guard. Crim. No. 16-656 at Docket No. 90, p. 117, lines 1-18. Federal agents boarded the vessel. Even assuming that this was not a routine inspection, it is nonetheless clear from the record that, at that point, Petitioner was not subjected to an interrogation triggering Miranda. When the Coast Guard officer boarded the vessel, he asked Petitioner two questions: (1) who was the master of the vessel, and (2) where was the vessel flagged from. Id. at p. 127, lines 6-18. As evidenced during trial, the Petitioner then volunteered that he had been approached to transport narcotics. Id. Petitioner's statement was not elicited through interrogation. It was a voluntary admission after routine questions that had nothing to do with narcotics. Indeed, the District Court so deemed, when in sidebar it stated that the statement "was portrayed […] [as] something that was not in response to a given question.". Id., p. 129, lines 14-15. The admission pertaining to the transportation of narcotics does not constitute a non-Mirandized statement. "Volunteered statements of any kind are not barred by the Fifth Amendment […]". Miranda v. Arizona, 384 U.S. at 478; Rhode Island v. Innis, 446 U.S. 291, 302 (1980) (an interrogation for Miranda purposes "can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response."); United States v. Jackson, 544 F.3d 351, 357 (1st Cir. 2008) ("[a] volunteered statement is not the product of interrogation and is not subject to suppression, even if warnings have not been provided.") Because the Petitioner's statement that he was asked to transport narcotics was not the product of a custodial interrogation, any motion to suppress at the district court level would have been futile, and counsel was not ineffective for choosing not to pursue it. See United States v. Mercedes-De La Cruz, 787 F.3d 61, 67 (1st Cir. 2015)(no prejudice when there is no reasonable likelihood of success on the merits); United States v. Ritch, 583 F.2d 1179, 182 (1st Cir. 1978) (counsel not required to submit frivolous or futile motions).

Petitioner also questions counsel's decision not to object to questions posed in direct examination to the agent, which resulted in the introduction of his incriminating statement at trial. Petitioner poses that the questions were leading. Rule 611 of the Federal Rules of Evidence

establishes that leading questions should not be used on direct examination, except as a manner to develop the witness's testimony. Fed.R.Evid. 611(c). "The test of a leading question is whether it suggests the answer desired by the examiner". United States v. Hansen, 256 F. Supp. 2d 65, 70 (D. Mass. 2003) (citations omitted). Questions which may be answered with either a 'Yes' or a 'No' are not necessarily leading. 1 ROBERT P. MOSTELLER, MCCORMICK ON EVIDENCE § 6 (8th ed. 2020). The questions posed by the prosecutor in this case were not leading. First, the prosecutor asked the witness to clarify what questions were asked of the Petitioner the day of the intervention. Then, the prosecutor sought clarification as to whether any additional information was provided by the Petitioner. The question at issue ("[d]id he tell you anything else?") did not suggest a particular answer. See U.S. v. Vazquez-Larrauri, 778 F.3d 276, 289 (1st Cir. 2015) (question was not leading when the prosecutor merely referenced in his question the witness's prior testimony). There was thus no ineffective assistance of counsel.

In any event, a complaint that counsel failed to object in a way desired by petitioner does not defeat the presumption of reasonability of the legal representation. See De Jesus v. U.S., 30 F.Supp.2d 115, 117–18 (D.P.R. 1998) (no ineffective assistance when counsel failed to object). A claim of ineffective assistance of counsel cannot be based on a petitioner's after-the-fact disagreement with trial strategy chosen by counsel, especially in a case, such as this one, where the evidence presented at trial to convict the Petitioner was very strong. See Castillo v. Matesanz, 348 F.3d 1, 14 (1st Cir. 2003) (counsel is given a heavy measure of deference concerning trial strategy). The First Circuit in this case held that there was very strong evidence against the Petitioner, aside from Petitioner's incriminating statement, including "a video of the yola's interception that depicts individuals throwing packages overboard, cocaine retrieved that same evening from the area of the interception site, and evidence that the gunwale of the yola tested positive for cocaine". U.S. v Mendoza-García, Appeal No. 17-1864, at 2. Counsel's decision not to object to the purportedly leading question on direct examination would not have made a difference in the outcome of the trial.

### B.  Failure to object to alleged improper statements in closing arguments.

Petitioner further alleges that counsel was ineffective for failing to object to improper statements during closing arguments— vouching for the witnesses and the evidence— which resulted in appellate review for plain error. Docket Nos. 1-2. "A prosecutor improperly vouches for a witness when she places the prestige of her office behind the government's case by […]

imparting her personal belief in a witness's veracity or implying that the jury should credit the prosecution's evidence simply because the government can be trusted." U.S. v. Canty, 37 F.4th 775, 789 (1st Cir. 2022) (quoting U.S. v. Aviles-Colón, 536 F.3d 1, 25 (1st Cir. 2008)). Improper vouching can consist of taking personal ownership of the case. U.S. v. Vazquez-Larrauri, 778 F.3d 276, 284 (1st Cir. 2015). Another form of vouching occurs when the prosecutor "impart[s] her personal belief in a witness's veracity". United States v. Pérez-Ruiz, 353 F.3d 1, 9 (1st Cir. 2003).

Petitioner argues that the following statements made by the prosecutor during closing arguments constituted vouching and were objectionable:

MK 1 Gomez who took the statement of the defendant is the one to believe. Crim. No. 16-656 (ADC) at Docket No. 91, at 101, lines 2-3.

[…] [T]he defendant throws something overboard in the back, it is all confirmed with the ion swabs. Id. at 90, lines 6-8.

[…] [I]t is simply not true and the defendants' testimony is farfetched, a fantasy, self-serving and wrong, and does not cause any doubt and you should discard it. Id. at 94, lines 11-14.

There is nothing that supports the defendants' testimony in this case, not one bit of evidence. Id. at 91, lines 23-25.

It takes him a while to get it because that is because that thing is jammed somewhere, maybe under a false bottom or something they had to destroy or wedge up, maybe underneath fuel tanks, but look how long it takes. Id. at 104-5, lines 24-3.

Part and parcel with believing the defendant, is believing that the Coast Guard witnesses, especially MK 1 Gomez who took the stand and lied. Id. at 100, lines 17-20.

[l]et me make up the fact about the air seats. That is not credible, it is self serving, it is motivated, disregard it. Id. at 102, lines 3-4.

[…] look at the technology on this video and the clarity that you get. This is in the middle of the night it is impressive. Id. at 103, lines 4-6.

The statements Petitioner challenges do not constitute vouching for the witnesses. The statements do not give a personal assurance or establish that the prosecutor personally believed the statements. The prosecutor simply argued that the testimony of the witness for the Government was supported by the evidence presented at trial and was credible, while Petitioner's testimony was not. "[A]n

argument that does no more than assert reasons why a witness ought to be accepted as truthful by the jury is not improper witness vouching." U.S. v. Pérez-Ruiz, 353 F.3d at 10 (quoting United States v. Rodríguez, 215 F.3d 110, 123 (1st Cir. 2000)). The prosecutor is thus free to invite the jury to draw inferences of credibility, including by asserting that one witness is more credible than another or the defendant. United States v. Kasenge, 660 F.3d 537, 542 (1st Cir. 2011) (quoting U.S. v. Isler, 429 F.3d 19, 27 (1st Cir.2005)). See e.g., United States v. Alonso-Vega, 2022 WL 2292831, 4 (D.P.R.) (argument that there is no need to like a witness to believe him is not vouching); U.S. v. Pérez-Ruiz, 353 F.3d at 10 (no vouching when prosecutor was merely asking the members of the jury to use their common sense in evaluating the witnesses' testimony). And comments that a defendant is not credible are not improper. U.S. v. Matias, 707 F.3d 1, 6 (1st Cir. 2013) (not improper when a prosecutor argued that the defendant was trying to deceive the jury and that his version of events was "an incredible story […] it's a clever story, but it's just that, a story, because it doesn't add up").

And, in any event, the First Circuit in this case already decided that any failure to object to improper comments by the Government was of no consequence to Defendant. U.S. v. Mendoza-Garcia, Appeal No. 17-1864, at 2. ("[t]he instructions given to the jury, coupled with the strong evidence presented against Mendoza, lead us to conclude that any improper remarks by the prosecutor did not 'so poison […] the well' as to have affected the trial's outcome […]"). Petitioner is thus unable to show prejudice on account of any improper comments made by the Government at closing arguments or his counsel's failure to object to the same. See Frady, 456 U.S. at 166-68 (the standard of review for a § 2255 motion seeking collateral relief for errors not objected to during trial requires that a Defendant show cause and actual prejudice). Petitioner's argument that his counsel's failure to object led the First Circuit to apply the plain error standard is of no consequence because Petitioner has failed to demonstrate the prejudice required in a motion seeking collateral relief. See Castro-Davis v. U.S., 2015 WL 13928760 at *1 (1st Cir. 2015) (no ineffective assistance when petitioner cannot demonstrate the requisite prejudice in light of the court's mitigating instructions to the jury and the weight of the evidence supporting the jury's verdict); U.S. v. Kasenge, 660 F.3d 537, 543 (1st Cir. 2011) ("any potential harmful effect from the prosecutor's closing statement was safeguarded by the district court's final jury instructions"); U.S. v. Mejia–Lozano, 829 F.2d 268, 274 (1st Cir. 1987) (district judge's standard instruction sufficient to overcome prejudice).

### C.  Failure to appeal the constitutionality of the MDLEA.

Petitioner alleges that appellate counsel was ineffective for failing to appeal the District Court's denial of a motion to dismiss on the constitutionality of the MDLEA. Specifically, Petitioner argues that the MDLEA is not a permissible exercise of Congress's powers under the Define and Punish Clause. Docket No. 2 at 21. The District Court held that, since the authorities could neither confirm nor deny that the boat in international waters was of Dominican nationality, "the federal agents properly determined that defendants' vessel was without nationality pursuant to 46 U.S.C. § 70502(d)." U.S. v. Balbuena-Peguero, 2017 WL 1399696 at 3. The District Court further held that, as applied to Petitioner, the MDLEA is "a proper exercise of Congress's express power to define and punish […] Offences against the Law of Nations". Id. at 5 (citations omitted). An appeal of the Court's ruling on the motion to dismiss would have been futile and cannot be deemed an ineffective exercise of legal representation.

The First Circuit has upheld the MDLEA's constitutionality in drug trafficking cases when these involve stateless vessels in international waters. United States v. Nueci-Pena, 711 F.3d 191, 198 (1st Cir. 2013) (citing United States v. Estupinan, 453 F.3d 1336, 1338–39 (11th Cir. 2006) holding that Congress did not exceed its authority under the Piracies and Felonies Clause by enacting the MDLEA without requiring a jurisdictional nexus)). See also United States v. Cardales, 168 F.3d 548, 553 (1st Cir. 1999) (quoting United States v. Martínez–Hidalgo, 993 F.2d 1052 (3d Cir.1993) (the MDLEA does not contain a nexus requirement, and Congress intended the statute to override international law to the extent nexus could be required). Indeed, the facts in Petitioner's case and his argument regarding the constitutionality of the MDLEA are almost identical to those addressed by the First Circuit in United States v. Aybar-Ulloa, 987 F.3d 1, 2 (1st Cir. 2021). The defendant in Aybar argued that the MDLEA was unconstitutional because drug trafficking has not been recognized as a universal jurisdiction offense and he was a foreign national charged with drug trafficking in international waters on a vessel that did not belong to the United States. However, the First Circuit held that Aybar-Ulloa was not in a foreign vessel; he was in a stateless vessel on the high seas. Id. at 5-6. And "international law accepts the criminal prosecution by the United States of persons like Aybar, who was seized by the United States while trafficking cocaine on a stateless vessel on the high seas, just as if they were trafficking on a United States-flagged ship." Id. at 7. Consistent with the above, to this day, the state of the law is that "under international law, there is nothing unfair or arbitrary about prosecuting people aboard a stateless vessel for drug

trafficking." U.S. v. Ceballo, 2022 WL 16553204 at 6 (D.P.R.). See 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 3-12 (5th ed. 2011) ("[s]ince stateless vessels are 'international pariahs' and have no right to navigate freely on the high seas, they may be subjected to the jurisdiction of any state."). There is thus no indication that, had Petitioner's representative chosen to include the constitutionality of the MDLEA on appeal, he would have fared any better than before the District Court— Petitioner was deemed to be on a stateless vessel trafficking drugs on the high seas. U.S. v. Balbuena-Peguero, 2017 WL 1399696 *3. Petitioner is unable to demonstrate any prejudice due to appellate counsel's decision not to seek review of the District Court's decision in U.S. v. Balbuena-Peguero, 2017 WL 1399696.

**D. Request for an evidentiary hearing.**

Petitioner alleges that the cumulative effect of the errors addressed require an evidentiary hearing. Docket No. 1. Under Section 2255, "the petitioner bears the burden of establishing the need for an evidentiary hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). An evidentiary hearing is unnecessary when "(1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (quoting United States v. McGill, 11 F.3d 223, 225 (1st Cir.1993)) (citations omitted). Ultimately, whether or not to hold a hearing is up to the discretion of the Court. Bucci v. United States, 662 F.3d 18, 32 (1st Cir. 2011). As discussed above, the Petitioner in this case is unable to establish a claim of ineffective assistance of counsel under Strickland. An evidentiary hearing is unwarranted. See e.g., Rijo v. U.S., 2006 WL 852070, 6 (D.P.R.) (defendant not entitled to an evidentiary hearing because he failed to establish ineffective assistance of counsel under Strickland).

### III.    Conclusion

The Court recommends Petitioner's Section 2255 motion be **DENIED** without an evidentiary hearing, and that the case be dismissed with prejudice.

This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file timely and specific objections within the specified time waives the right to review in the District Court and those claims not preserved by such objections are precluded on appeal. See Thomas v. Arn,

474 U.S. 140, 155 (1985); <u>Davet v. Maccarone</u>, 973 F.2d 22, 30-31 (1st Cir. 1992); <u>Paterson-Leitch Co. v. Mass. Mun. Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988); <u>Borden v. Secretary of Health and Human Services</u>, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 30th day of January, 2023.

<u>s/Giselle López-Soler</u>
GISELLE LÓPEZ-SOLER
United States Magistrate Judge