## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LUCIANO MENDOZA-GARCIA,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

**Civil No. 20-1485 (ADC)**
**[Related to Crim. No. 16-00656-2 (ADC)]**

### OPINION & ORDER

On September 15, 2020, petitioner Luciano Mendoza-García ("petitioner") filed a motion to vacate and/or set aside his conviction pursuant to 28 U.S.C. § 2255 ("Mot." **ECF No. 1**) and a supporting memorandum of law ("Mem." **ECF No. 2**). Petitioner seeks to vacate his conviction for conspiracy to import controlled substances, possession of controlled substances on board a vessel subject to the jurisdiction of the United States, aiding and abetting thereof, and conspiracy to possess controlled substances on board a vessel subject to the jurisdiction of the United States. *See* Judgment at 1-2, *United States v. Mendoza-García*, Crim. No. 16-656 (D.P.R. Aug. 1, 2017), ECF No. 77.[1] Petitioner's conviction and sentence was affirmed on appeal by the First Circuit on June 27, 2019. *See* **Crim. No. 16-656, ECF No. 99**. He did not seek review in the Supreme Court.

---

[1] All references to the docket of *United States v. Mendoza-García*, Crim. No. 16-656, shall hereinafter be "**Crim. No. 16-656**" followed by the applicable electronic docket entry, so as to distinguish these from references to the above-captioned civil case docket.

On August 24, 2022, the Court referred petitioner's motion to U.S. Magistrate Judge Giselle López-Soler for a Report and Recommendation ("R&R"). **ECF No. 10**. The Magistrate Judge issued an R&R on January 30, 2023, recommending the denial of petitioner's motion without need for a hearing. **ECF No. 12**. Petitioner filed objections to the R&R ("Objs.") on February 15, 2023. **ECF No. 13**.

Having performed a *de novo* review of those properly objected portions of the R&R, for the following reasons, the Court hereby **ADOPTS** the R&R's recommendations, **OVERRULES** petitioner's objections to the R&R, and **DENIES** petitioner's motion to vacate.

## I.   Relevant Background

### A.   Petitioner's Motion

Petitioner sought to vacate his conviction on the grounds that that his attorneys at both trial and appellate levels were ineffective to the point that his rights under the Sixth Amendment of the Constitution of the United States were impaired. U.S. Const. amend. VI. The basis of petitioner's claim can be summed up as follows.

First, petitioner claimed that his trial attorney committed various errors in relation to an allegedly non-Mirandized statement that was used against him in trial.[2] The incriminating statement at issue was uttered by defendant during the government's interdiction and boarding of his unflagged vessel on the high seas off the coast of Puerto Rico. As per the trial record, the

---

[2] In reference to *Miranda v. Arizona*, 384 U.S. 436 (1966).

statement was introduced to the jury during the direct examination of government witness

Daniel Gómez, a U.S. Coast Guard officer, and went as follows:

> Q. Again, what two questions did you ask him?
>
> A. I asked him who the master of the vessel was and where the vessel was flagged from.
>
> Q. And how did he respond?
>
> A. He told me that he did not know who the master of the vessel was and that the vessel was flagged from the Dominican Republic.
>
> Q. Did he tell you anything else?
>
> A. Yes. He told me also that he was approached by a man named Ricky to take some narcotics.
>
> Q. Did you ask him this in the Spanish or English language?
>
> A. I asked him in Spanish.

**Crim. No. 16-656, ECF No. 90** at 127:6-18; *see also*, Mem., at 14-15. Shortly thereafter, defendant's

trial counsel attempted to cross-examine the witness, asking whether petitioner was read "his

rights" prior to questioning. **Crim. No. 16-656, ECF No. 90** at 128:3-7. However, the government

objected to the question and the Court sustained the objection on the grounds that petitioner

had not moved to supress the statement before trial, and that the statement had already been

presented to the jury in direct examination without objection. *Id.*, at 129:4-12.[3]

Petitioner argued in his motion that, had his attorney moved to supress the statement

and/or object to its use at trial, it would have resulted in "a reasonable probability that the Court

---

[3] More so, the trial record supports the conclusion that at the time the statement was made, defendant was not under custody and the statement was not made in response to a custodial interrogation, as explained further below.

would have sustained the objections, provided curative instruction, and/or (most importantly) a more favorable standard on appellate review….” Mem., at 18. Petitioner further claimed that the referenced questions were "leading" questions and that his trial attorney was ineffective for failing to object to them. *Id.*, at 14-16. Lastly, petitioner argued that his trial attorney was also ineffective because he failed to object to the government's use of the statement during closing arguments. *Id.*, at 14-19.

Second, petitioner alleged in his motion that his trial attorney was ineffective because he failed to object to the government's "vouching" for witness statements and evidence during closing arguments. *Id.*, at 19-20. In his motion, petitioner singled out the following statements:

[…] MK 1 Gomez who took the statement of the defendant is the one to believe. **Crim. No. 16-656, ECF No. No. 91** at 101:2-3.

[…] [T]he defendant throws something overboard in the back, it is all confirmed with the ion swabs. *Id.*, at 90:6-8.

[…] [I]t is simply not true and the defendants' testimony is farfetched, a fantasy, self-serving and wrong, and does not cause any doubt and you should discard it. *Id.*, at 94:11-14.

There is nothing that supports the defendants' testimony in this case, not one bit of evidence. *Id.*, at 91:23-25.

It takes him a while to get it because that is because that thing is jammed somewhere, maybe under a false bottom or something they had to destroy or wedge up, maybe underneath fuel tanks, but look how long it takes. *Id.*, at 104:24-25, 105:1-3.

Part and parcel with believing the defendant, is believing that the Coast Guard witnesses, especially MK 1 Gomez who took the stand and lied. *Id.*, at 100:17-20.

[l]et me make up the fact about the air seats. That is not credible, it is self-serving, it is motivated, disregard it. *Id.*, at 102:3-4.

[…] look at the technology on this video and the clarity that you get. This is in the middle of the night it is impressive. *Id.*, at 103:4-6.

*See* Mem., at 19-20.

Third, while all the above "errors" refer to his trial counsel's performance, petitioner also raised an ineffective assistance claim with regards to his appellate counsel's decision not to pursue an appeal on the grounds that the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70501 et seq., is unconstitutional. *Id.*, at 21-22. Petitioner pointed to the fact that he had raised an argument to that effect before the District Court (which denied it), but that it was not included by his appellate counsel in his appeal.

Based on the above, petitioner argued that the "cumulative impact" of these errors violated his Sixth Amendment rights to effective assistance of counsel and warranted vacating his conviction, or at least the celebration of an evidentiary hearing. *Id.*, at 22-24.

### B.    The Government's Opposition

The government filed a response to the motion on January 7, 2021 ("Opp'n" **ECF No. 8**). In essence, the government contended that petitioner's failure to move to supress the statement at issue or to object to its introduction at trial answers to sound strategy inasmuch as there was no legal basis for either request. *Id.*, at 10-11. Specifically, the government argued that petitioner was not subjected to an interrogation when he made the statement at issue and that it was made voluntarily, displacing the application of *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.*, at 11-12. The government also disputed petitioner's "leading" and "vouching" characterizations of the

prosecutor's questions and statements during trial. *Id.*, at 12-15. As to the latter, the government also contended that, even if they were such, any objection would not have changed the outcome of his case given the strength of the evidence presented. *Id.*, at 12-13. Therefore, the government argued that petitioner's disagreement with his counsel regarding trial management or strategy is not a proper basis for postconviction relief. *Id.*, at 11.

As to petitioner's claim of ineffective assistance of his appellate counsel, the government argued that petitioner had not shown that the argument on the unconstitutionality of MDLEA was "clearly stronger than those counsel chose to assert" on appeal. *Id.*, at 16. In support, the government points to the Court's prior decision denying petitioner's MDLEA challenge, *United States v. Balbuena-Peguero*, No. 16-cr-656 (ADC), 2017 WL 1399696 (D.P.R. Apr. 18, 2017), and the fact that the First Circuit and other appellate courts have long held MDLEA to be constitutional. *Id.*, at 17-18.

### C.    Petitioner's Reply

Petitioner filed a reply on January 29, 2021 ("Reply" **ECF No. 9**). The reply focused on attacking the government's assertion that petitioner's trial counsel's decisions not to move for the suppression of his statement, to not object to the allegedly "leading questions," and to not object to the prosecutor's closing argument, all responded to trial strategy. *Id.*, at 1-7. Petitioner emphasized the lack of an affidavit from his trial counsel attesting to such strategy as a reason why an evidentiary hearing for his petition was required. *Id.*, at 9. As to his failure to raise his MDLEA claim on appeal, petitioner argued that the government's defense of his appellate

attorney's decision is "speculative" and "incomprehensible," and that an alleged "Circuit split" on the law gave him a meritorious, non-frivolous argument. *Id.* at 7-8.

**D.     The R&R**

The Magistrate Judge issued the R&R on January 30, 2023. **ECF No. 12**. In the R&R, the Magistrate Judge applied the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1985) to petitioner's claims of ineffective assistance of counsel. She began by finding that government agents acting under MDLEA may hail and board unidentified vessels to establish nationality without triggering the need for *Miranda* warnings. *Id.*, at 3. The Magistrate Judge then went on to observe that even if the interdiction of defendant's vessel was not a "routine inspection," defendant's statement was nonetheless given voluntarily and not the product of a custodial interrogation. *Id.*, at 4. Therefore, because a motion to supress the statement under *Miranda* "would have been futile" petitioner's trial counsel "was not ineffective for choosing not to pursue it." *Id.*

The Magistrate Judge then considered the claim that petitioner's trial counsel failed to object to leading questions. She found that the government's questions were not leading questions, and that, "[i]n any event, a complaint that counsel failed to object in a way desired by petitioner does not defeat the presumption of reasonability of the legal representation." *Id.*, at 5 (citing *De Jesús v. U.S.*, 30 F. Supp. 2d 115, 117-18 (D.P.R. 1998)). The Magistrate Judge concluded, citing the First Circuit's affirmance of petitioner's conviction, that the strength of the evidence against him was "very strong" and that "[c]ounsel's decision not to object to the

purportedly leading questions on direct examination would not have made a difference in the outcome of the trial." *Id.*, at 5; *see also,* **Crim. No. 16-656, ECF No. 99** at 2.

As to petitioner's "improper vouching" claim, the Magistrate Judge went through the allegedly improper statements made by the prosecutor in his closing arguments and found that they "do not constitute vouching for witnesses." R&R, at 6. Referring again to the First Circuit's affirmance of his conviction, the Magistrate Judge noted that "the First Circuit in this case already decided that any failure to object to improper comments by the [g]overnment was of no consequence to [petitioner]." *Id.*, at 7; *see also,* **Crim. No. 16-656, ECF No. 99** at 2. The Magistrate Judge concluded that petitioner failed to demonstrate prejudice, which defeated his ineffective assistance claim under *Strickland*. R&R, at 7.

Finally, the Magistrate Judge addressed petitioner's claim that his appellate counsel was ineffective for failing to raise an argument as to the unconstitutionality of MDLEA on appeal. In this regard, the Magistrate Judge recalled that "the First Circuit has upheld the MDLEA's constitutionality in drug trafficking cases when these involve stateless vessels in international waters." *Id.*, at 8 (citing authorities). The Magistrate Judge emphasized that petitioner's case is factually similar to that of *United States v. Aybar-Ulloa*, 987 F.3d 1 (1st Cir. 2021) (en banc), and that "[t]here is thus no indication that, had [p]etitioner's representative chosen to include the constitutionality of the MDLEA on appeal, he would have fared any better…." *Id.*

As to petitioner's request for an evidentiary hearing, the Magistrate Judge concluded that it is unwarranted given petitioner's failure to establish a claim of ineffective assistance of counsel. *Id.*, at 9.

## II.   Standard of Review

Magistrate judges are granted authority to make recommendations on pretrial matters dispositive of a claim or defense, while the ultimate resolution of dispositive motions remains at the discretion of the presiding judge. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a), (b)(1); *accord* Loc. Civ. R. 72(a)(7)-(9). Any party adversely affected by the recommendation issued may file written objections within fourteen (14) days of being served with the report and recommendation. Fed. R. Civ. P. 72(b). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F. Supp. 2d 189, 191–92 (D.P.R. 2005) (citing *United States v. Raddatz,* 447 U.S. 667, 673 (1980)). "The district court need not consider frivolous, conclusive, or general objections." *Rivera-García v. United States,* Civ. No. 06–1004 (PG), 2008 WL 3287236, *1 (D.P.R. Aug. 7, 2008) (citing *Battle v. U.S. Parole Comm'n,* 834 F.2d 419 (5th Cir. 1987)).

Moreover, to the extent the objections amount to no more than general or conclusory objections to the report and recommendation, without specifying to which issues in the report the party is objecting, or where the objections are repetitive of the arguments already made to the magistrate judge, a *de novo* review is unwarranted. *Id.* "Instead, the report and

recommendation is reviewed by the district judge for clear error." *Id.* (citing *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) ("It is improper for an objecting party to ... submit[ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.")).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636(b)(1); *see also Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985); *Alamo Rodríguez v. Pfizer Pharma., Inc.*, 286 F. Supp. 2d 144, 146 (D.P.R. 2003). Hence, the court may accept those parts of the report and recommendation to which the party does not object. *See Hernández–Mejías v. General Elec.*, 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F. Supp. 2d 114, 125–26 (D.R.I. 2004)). The Court, however, "is not required to make separate findings of fact or issue an opinion setting forth its own reasoning." *U.S. v. Bach*, 388 F. App'x 2 (1st Cir. 2010) (citing *Jonco, LLC v. ALI, Inc.*, 157 F.3d 33, 35 (1st Cir. 1998).

## III.  **Analysis**

Where a petitioner moves to vacate his sentence on ineffective assistance of counsel grounds, he must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland*, 466 U.S. at 686. "In order to succeed on an ineffective assistance claim, a '[petitioner]

must show both that counsel's performance was deficient and that it prejudiced his defense.'"
*Rojas-Medina v. United States*, 924 F.3d 9, 15 (1st Cir. 2019) (citing *Janosky v. St. Amand*, 594 F.3d 39, 45 (1st Cir. 2010)). "Unless a defendant makes **both showings**, it cannot be said that the conviction… resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687 (emphasis added). "A [petitioner's] failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong." *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010) (citing *Strickland*, 466 U.S. at 697). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." *Strickland*, 466 U.S. at 679. *See also Martínez-Armestica v. United States*, 468 F. Supp. 3d 470, 473–74 (D.P.R. 2020).

Petitioner lodged several objections to the R&R's conclusions that his ineffective assistance claims failed under the *Strickland* standard. *See* Objs., at 1-4. Most of them echo the arguments already considered by the Magistrate Judge, albeit against the backdrop of the R&R. The Court will proceed with its review by consolidating petitioner's objections into two general categories: objections as to his trial counsel's performance and those related to his appellate counsel's. The Court finds that petitioner's trial-level objections warrant *de novo* review, but his appellate-level objection will be reviewed for clear error due to it being almost identical to the arguments already considered and ruled upon by the Magistrate Judge.

### A. Effectiveness of Trial Counsel

    1. **There is no prejudice under *Strickland* from being exposed to a heightened standard of review on appeal.**

As a threshold matter, the Court considers it important to address an important aspect of petitioner's arguments. Underlying all of his claims for ineffective assistance of counsel at trial level is a claim that his counsel's failure to object to the matters discussed below, caused him prejudice on appeal. That is, because a higher standard of review was applied to him on appeal, he alleges that his representation at trial was ineffective. Petitioner does not discuss this position, nor does he cite any authority in support, in either his memorandum of law in support of his motion to vacate or in his objections to the R&R.

Regardless, this argument is meritless. While petitioner is correct that a preserved objection at trial normally warrants a relatively less exacting standard of review on appeal, being subjected to plain error review on appeal due to an unpreserved objection at trial is not prejudicial under *Strickland*. The *Strickland* analysis focuses on the fairness of the outcome of the challenged proceeding—which, as relates to petitioner's arguments, is his conviction at trial. Thus, for *Strickland* purposes, his trial counsel's performance is not measured against the outcome of the appeal, but of the trial.

Accepting petitioner's logic may lead to absurd results. For example, a court may end up finding prejudice **on appeal** from a non-prejudicial error **at trial**. That is, it could lead to a situation where an error at trial with no reasonable probability of affecting the trial's outcome (i.e., non-prejudicial) would nonetheless be prejudicial on appeal because a higher standard of

review applied as a consequence. This result is neither sound nor consonant with *Strickland* and would in practice be an end-run around its prejudice prong. *See United States v. Resnick*, No. 2:11 CR 68, 2019 WL 6912334, at *15 (N.D. Ind. Dec. 19, 2019), *aff'd*, 7 F.4th 611 (7th Cir. 2021) ("The analysis for which Resnick advocates would produce the perverse result of vacating his conviction – despite there being no prejudice on the outcome of his jury trial – on the basis that the Court of Appeals would have ruled differently had the question been put before it *de novo*.").

Having clarified the above, the Court proceeds with its review of petitioner's objections.

### 2. Whether petitioner was subject to a custodial interrogation that should have triggered the need for *Miranda* warnings.

Petitioner alleges that the R&R does not address whether his trial counsel was ineffective for failing to move to suppress the non-Mirandized statement. Objs., at 4-5. However, petitioner's objection (as well as others discussed further below) is based on his fundamental disagreement with the Magistrate Judge's conclusion that his vessel's interdiction did not trigger the need for *Miranda* warnings. *See id.*, at 1 ("The Report's position is that no *Miranda v. Arizona*, 384 U.S. 436 (1966) warnings were required. When the facts of this case are viewed in their entirety, it is clear that *Miranda* warnings were required."). The Court reviews *de novo* petitioner's objection to this portion of the R&R (pp. 2-4).

Under *Miranda*, before interrogating a suspect in custody, law enforcement officers must appraise him or her of certain rights to assure that the Fifth Amendment guarantee against self-incrimination is respected. *United States v. Jackson*, 544 F.3d 351, 356 (1st Cir. 2010). Failure to do

so may result in the suppression of statements made by the suspect during a custodial interrogation. *United States v. Candelario-Santana*, 834 F.3d 8, 18 (1st Cir. 2016). Therefore, for the *Miranda* exclusionary rule to apply, the suspect must be in custody and subjected to interrogation without having been read his rights.

Petitioner argues that his interdiction met the criteria of a custodial interrogation, citing to *United States v. Lanni*, 951 F.2d 440 (1st Cir. 1991). Objs., at 1-2. He contends that the setting of his questioning was not neutral, as "he was questioned in the middle of the ocean, after being pepper sprayed and in the custody of the Customs and Border Patrol Agent, who were retrieving cocaine bundles all around his vessel." *Id.*, at 2. Further, he argues that the federal agents were armed and surrounded him, and that his interrogation could have been expected to last for an extended period. *Id.* He contends that given these circumstances, he was under custody and that the federal agents were required to give him *Miranda* warnings before questioning him.

First, the Court notes that the merits of a hypothetical motion to suppress fall squarely under *Strickland*'s prejudice prong because petitioner's claim would fail absent a "reasonable probability that, but for counsel's unprofessional error, the results of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Tevlin v. Spencer*, 621 F.3d at 66. In that sense, it was proper for the Magistrate Judge—and is proper for the Court here—to address the merits of this question in determining whether petitioner's trial counsel was ineffective. *See United States v. Carrigan*, 724 F.3d 39, 44 (1st Cir. 2013), *abrogated on other grounds by Mathis v. United*

*States*, 579 U.S. 500 (2016) ("Failure to satisfy one of the *Strickland* prongs is fatal and, therefore, we are free to tackle either prong first.").

A "custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Locke v. Cattell*, 476 F.3d 46, 51 (1st Cir. 2007) (citing *Miranda*, 384 U.S. at 444). Importantly, "it is the combination of 'custody' and 'interrogation' that warrants the giving of these warnings." *U.S. v. Sánchez*, 817 F.3d 38, 44 (1st Cir. 2016). In determining whether a person is in "custody," courts consider factors such as "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." *U.S. v. Nishnianidze*, 342 F.3d 6, 13 (1st Cir. 2003) (quoting *U.S. v. Masse*, 816 F.2d 805, 809 (1st Cir. 1987). Importantly, for there to be an "interrogation," the questions must be aimed at obtaining incriminating information. *See Rhode Island v. Innis*, 446 U.S. 291, 302 (1980) ("…the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response."); *accord U.S. v. Díaz-Rosado*, 857 F.3d 116, 122 (1st Cir. 2017) (equating "interrogation" to definition supplied by *Innis*).

*Miranda* does not apply every time a person is questioned by government agents. *Miranda* itself carved out from its scope booking-type questions as well as general on-the-scene questions. *See, e.g., Miranda*, 384 U.S. at 477 ("General on-the-scene questioning as to facts

surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding."); *Sánchez*, 817 F.3d at 44 (explaining that "booking exception" to *Miranda* is driven by "the idea that questions of this sort [*i.e.*, background information such as a suspect's name and address)] rarely elicit an incriminating response…."). Most relevant here, courts in this district have long held that routine boarding and inspection on the high seas do not give rise to custodial detentions. *U.S. v. Vilches-Navarrete*, 413 F. Supp. 2d 60, 66 (D.P.R. 2006) (citing *United States v. Elkins*, 774 F.2d 530, 535 n.3 (1st Cir. 1985); *U.S. v. Andujar-Aponte*, No. 09-096 (DRD), 2010 WL 597483 (D.P.R. Feb. 10, 2010) (adopting report and recommendation). The same has likewise long been held in the Eleventh Circuit, which sees a considerable number of cases involving maritime interdictions. *See, e.g., U.S. v. Gruezo*, 66 F.4th 1284, 1292 (11th Cir. 2023) ("…the Coast Guard's routine stop, boarding[,] and inspection of an American vessel on the high seas does not normally rise to the level of custodial detention thus requiring *Miranda* warnings.") (citing *U.S. v. Rioseco*, 845 F.2d 299, 302–03 (11th Cir. 1988)); *U.S. v. Napa Moreira*, 810 F. App'x 702, 706 (11th Cir. 2020) (same).

Given these longstanding authorities, it is highly likely that the Court would have found that the interdiction at issue here was not custodial in nature. But even ignoring this precedent for the sake of argument, the two questions at issue here were evidently not designed to elicit incriminatory information. They were more akin to routine border questioning or on-the-scene questioning designed to allow the Coast Guard to confirm the nationality of the vessel. And the context in which they were made is similar to that of the execution of a search warrant given the

Coast Guard's statutory authority to board and inspect vessels. 14 U.S.C. § 522(a). It would have been highly unlikely for defendant's counsel to have successfully argued that petitioner was subjected to a custodial interrogation in this context.

Finally, under *Miranda*, "a volunteered statement is not the product of a custodial interrogation and is not subject to suppression, even if warning have not been provided." *U.S. v. Jackson*, 544 F.3d 351, 357 (1st Cir. 2008). That is because "[t]he fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated." *Miranda*, 384 U.S. at 478. Thus, voluntary, incriminating statements made under custody, but not as a result of interrogation (as defined by case law), are not excludable under *Miranda*. Because we find that the record reflects that defendant was not subject to a custodial interrogation, his incriminating statement was not excludable under *Miranda*.

Having no reasonable chance of success, the Court finds that there was no prejudice to petitioner under *Strickland* from his trial counsel's failure to move to suppress his statement. The results of his trial would have likely been the same had it been filed. It is therefore unnecessary for this Court to analyze whether petitioner's trial counsel's conduct was objectively unreasonable or whether it responded to sound trial strategy. *See, e.g., Tevlin v. Spencer*, 621 F.3d at 66; *Carrigan*, 724 F.3d at 44.[4] Petitioner's objections are therefore **OVERRULED**.

---

[4] For that matter, it is likewise unnecessary for the Court to address petitioner's insistence that an affidavit from his trial counsel was necessary to support a presumption that he acted according to sound trial strategy. Objs., at 4-5. Nonetheless, a review of the trial record shows that petitioner's counsel presented a reasonable and coherent (if

### 3. Whether the prosecutor asked impermissible leading questions and vouched for the credibility of witnesses and evidence.

Petitioner's second group of objections concern the Magistrate Judge's conclusion that his trial attorney's failure to object to the purportedly "leading" questions that led to the introduction of the statement at trial and the prosecutor's "improper vouching" statements during closing arguments did not constitute ineffective assistance of counsel. *Id.*, at 5-6. In both instances, after an exhaustive *de novo* review of the trial transcripts, the R&R, and the motions on record, the Court considers that the Magistrate Judge's well-reasoned analysis and conclusions are unimpeachable.

As to the purported failure to object "leading" questions trial-level objection, after a review of the trial transcript, the Court is satisfied with restating and incorporating the Magistrate Judge's straightforward and on-point analysis:

> Petitioner poses that the questions were leading. Rule 611 of the Federal Rules of Evidence establishes that leading questions should not be used on direct examination, except as a manner to develop the witness's testimony. Fed. R. Evid. 611(c). "The test of a leading question is whether it suggests the answer desired by the examiner". *United States v. Hansen*, 256 F. Supp. 2d 65, 70 (D. Mass. 2003) (citations omitted). Questions which may be answered with either a 'Yes' or a 'No' are not necessarily leading. 1 ROBERT P. MOSTELLER, MCCORMICK ON EVIDENCE § 6 (8th ed. 2020). The questions posed by the prosecutor in this case were not leading. First, the prosecutor asked the witness to clarify what questions were asked of the Petitioner the day of the intervention. Then, the prosecutor sought clarification as to whether any additional information was provided by the Petitioner. The question at issue ("[d]id he tell you anything else?") did not suggest a particular answer. *See U.S. v. Vazquez-Larrauri*, 778 F.3d 276, 289 (1st Cir. 2015) (question was

---

ultimately unavailing) defense based on the supposed inability of the government to tie the drugs seized near the site of interdiction to petitioner and his vessel, as well as on petitioner's own testimony at trial that he was merely a migrant seeking entry to Puerto Rico. *Id.*, at 4-5.

not leading when the prosecutor merely referenced in his question the witness's prior testimony). There was thus no ineffective assistance of counsel.

In any event, a complaint that counsel failed to object in a way desired by petitioner does not defeat the presumption of reasonability of the legal representation. *See De Jesus v. U.S.*, 30 F.Supp.2d 115, 117–18 (D.P.R. 1998) (no ineffective assistance when counsel failed to object). A claim of ineffective assistance of counsel cannot be based on a petitioner's after-the-fact disagreement with trial strategy chosen by counsel, especially in a case, such as this one, where the evidence presented at trial to convict the Petitioner was very strong. *See Castillo v. Matesanz*, 348 F.3d 1, 14 (1st Cir. 2003) (counsel is given a heavy measure of deference concerning trial strategy). The First Circuit in this case held that there was very strong evidence against the Petitioner, aside from Petitioner's incriminating statement, including "a video of the yola's interception that depicts individuals throwing packages overboard, cocaine retrieved that same evening from the area of the interception site, and evidence that the gunwale of the yola tested positive for cocaine". *U.S. v Mendoza-García*, Appeal No. 17-1864, at 2. Counsel's decision not to object to the purportedly leading question on direct examination would not have made a difference in the outcome of the trial.

R&R, at 4-5. Therefore, a trial objection based on the questions being "leading' would have had no reasonable chance of success, and the claim fails under *Strickland*'s second prong.

As to the purported "vouching" during closing arguments, the Court likewise reviewed with care the trial transcript containing the statements at issue. Because the complained-of statements do not constitute vouching, petitioner has likewise failed to demonstrate that there is a "reasonable probability that, but for counsel's unprofessional error, the results of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Court repeats and incorporates as its own the Magistrate Judge's exposition of the definition of "improper vouching" under First Circuit case law.

"A prosecutor improperly vouches for a witness when she places the prestige of her office behind the government's case by […] imparting her personal belief in a witness's veracity or implying that the jury should credit the prosecution's evidence simply because the government can be trusted." *U.S. v. Canty*, 37 F.4th 775, 789 (1st Cir. 2022) (quoting *U.S. v. Aviles-Colón*, 536 F.3d 1, 25 (1st Cir. 2008)). Improper vouching can consist of taking personal ownership of the case. *U.S. v. Vázquez-Larrauri*, 778 F.3d 276, 284 (1st Cir. 2015). Another form of vouching occurs when the prosecutor "impart[s] her personal belief in a witness's veracity". *United States v. Pérez-Ruiz*, 353 F.3d 1, 9 (1st Cir. 2003).

R&R, at 5-6.

Out of the eight statements that petitioner claims constituted "vouching," all but one, when read in their proper context, follow or precede the prosecutor's reference to testimony or evidence presented at trial as justification why such testimony or evidence should be relied upon or not. *See U.S. v. Rodríguez*, 215 F.3d 110, 123 (1st Cir. 2000) ("[A]n argument that does no more than assert reasons why a witness ought to be accepted as truthful by the jury is not improper witness vouching."); *see also Vázquez-Larrauri*, 778 F.3d at 283 ("It is generally permissible for the government to offer specific 'reasons why a witness ought to be accepted as truthful by the jury.'") (quoting *Rodríguez*, 215 F.3d at 123). The remaining statement, when read in context, evinces that it was an imploration to the jury to analyze the credibility of a government's witness as a whole: "I submit to you when you look at the individuals that testified, their motivations and demeanor, MK Gómez who took the statement of the defendant is the one to believe. That is supported by all of the evidence in the case." **Crim. No. 16-656, ECF No. No. 91** at 100:25 to 101:1-4. Finally, none of the complained-of statements involve the prosecutor interjecting his personal beliefs as to the credibility of government witnesses or the evidence. Insofar as they

refer to the credibility of defendant, who took the stand and testified in his trial, the prosecutor was free to "comment on the implausibility of is testimony." *U.S. v. Matias*, 707 F.3d 1, 6 (1st Cir. 2013) (quoting *U.S. v. Isler*, 429 F.3d 19, 27 (1st Cir. 2005); *see also U.S. v. Coots*, 408 Fed. App'x 968, 974 (6th Cir. 2011) (unpublished) ("Where a case involves two conflicting stories, a prosecutor may reasonably argue that one side is lying.").

In the Court's view, petitioner's complaints about vouching are based on cherry-picked portions of the trial transcript that ultimately go nowhere. Petitioner's objections as to his trial counsel's failure to object to purportedly "leading" questions and "vouching" statements are **OVERRULLED**.

### B.  Effectiveness of Appellate Counsel

Petitioner's sole objection to his appellate counsel's performance centers on her failure to challenge to the constitutionality of MDLEA on appeal. In her analysis, the Magistrate Judge concluded that this claim failed the prejudice prong of the *Strickland* test because MDLEA has been upheld as constitutional by the First Circuit "in drug cases when these involve stateless vessels in international waters." *See* R&R at 8-9. To drive the point, the Magistrate Judge compared petitioner's challenge to the one rejected in *U.S. v. Aybar-Ulloa*, 987 F.3d 1 (1st Cir. 2021) (en banc).

Petitioner objects to this conclusion, raising the very same arguments included in his motion to vacate and memorandum of law. *Compare* Mem., at 21-22 *with* Objs., at 7-8. As such, the Court need not consider these objections, as they are merely a rehashing of matters already

seen and adjudged by the Magistrate Judge. *See Rivera–García v. United States,* Civ. No. 06–1004 (PG), 2008 WL 3287236, *1 (D.P.R. Aug. 7, 2008) (where objections are repetitive of arguments already made to the magistrate judge, a *de novo* review is unwarranted and clear error standard is applied). Nonetheless, reviewing the R&R for clear error, the Court finds none.

Petitioner rests his objection on the existence of an alleged circuit split between the First Circuit in *U.S. v. González*, 311 F.3d 440 (1st Cir. 2002), and other Circuit Courts as to whether "MDLEA's jurisdiction component… implicate[s] the Court's subject matter jurisdiction." Objs., at 7-8. The out-of-circuit cases he cites relate to the question of whether a defendant waives the right to raise a jurisdictional challenge under MDLEA on appeal by entering a plea deal. *See U.S. v. Miranda*, 780 F.3d 1185 (D.C. Cir. 2015); *U.S. v. De La Garza*, 516 F.3d 1266 (11th Cir 2008); *U.S. v. Bustos-Useche*, 273 F.3d 622 (5th Cir. 2001). The "jurisdiction component" of MDLEA is relevant to that question because arguments against a district court's subject-matter jurisdiction cannot be waived by plea agreement. In *González*, the First Circuit ruled that the statutory clause at issue was not a jurisdiction-conferring clause directed at the district court, and therefore, the defendant's unconditional guilty plea forfeited his claim on appeal that "the speed boat was other than a stateless vessel." 311 F.3d at 444. The out-of-circuit cases that defendant cites in his support hold otherwise and permit jurisdictional challenges on appeal—but nothing more. *See Miranda*, 780 F.3d at 1197 ("Proceeding to the merits, we reject appellant's argument…."); *De La Garza*, 516 F.3d at 1271 ("De La Garza did not waive his subject matter jurisdiction argument because it cannot be waived… We hold, however, that the district court had subject matter

jurisdiction….”); *Bustos-Useche*, 273 F.3d at 629 (“We find that the district court satisfied the statutory requirement for jurisdiction under [MDLEA.]”).

Unfortunately for petitioner, the purported existence of a circuit split on this question is irrelevant to him. He did not enter into a plea agreement but went to trial instead. He is not raising on appeal a purportedly waived jurisdictional argument but claiming ineffective assistance of counsel in a motion for post-conviction relief. Therefore, a plain reading of petitioner's objection shows that, insofar as it is based exclusively on the existence of circuit split discussed above, it has no merit.

Having determined as much, the Court may simply proceed to overrule petitioner's objection as stated. Erring on the side of caution, the Court will venture an additional observation: even if the Court were to construe petitioner's objection in a broader sense by reviewing the R&R *de novo* and analyzing not his objection, but the argument made below before the Magistrate Judge in his memorandum of law (Mem., at 21-22), the Court would nevertheless conclude that the Magistrate Judge was correct in finding no prejudice under *Strickland*.

Petitioner's appellate counsel was not required to put forth novel theories or anticipate changes in the law. Apart from the alleged circuit split (which was not directly applicable to his case), petitioner does not offer any other reason why his appellate counsel's decision not to include an MDLEA constitutional challenge on appeal was ineffective. This holds true even though there was litigation in the First Circuit concerning the constitutionality of MDLEA occurring near the time of his appeal. For instance, the Magistrate Judge cited in her R&R the

First Circuit's *en banc* opinion in *Aybar-Ulloa,* 987 F.3d 1 (1st Cir. 2021)—correctly equating the appellant's factual position there to petitioner's own position here. *See* R&R, at 8. This decision was issued on January 25, 2021 and ultimately upholds the constitutionality of MDLEA against an as-applied challenge.[5] Further, another contemporaneous challenge to MDLEA's constitutionality is currently under *en banc* review before the First Circuit. *See U.S. v. Dávila-Reyes*, No. 16-2089 (1st Cir. argued Oct. 18, 2022). But in both cases, the granting of rehearing *en banc* post-dated petitioner's appeal: he filed his brief on appeal on October 12, 2018 and the First Circuit affirmed his conviction on June 26, 2019, whereas rehearing *en banc* was granted on January 17, 2020 in *Aybar-Ulloa* and on July 5, 2022 in *Dávila-Reyes*. Therefore, even if it could be argued that the existence of pending appellate litigation challenging the constitutionality of MDLEA should have put appellate counsel on notice of the possible merits of raising the constitutional challenge, the *en banc* rehearings came too late for the cases to have possibly rung any bells in appellate counsel's mind.[6] At the time he filed his appeal, the First Circuit had yet to make any pronouncement which would indicate to appellate counsel a reasonable probability of success on the MDLEA challenge. As of today, MDLEA was and remains good law in the First Circuit.

---

[5] Which supports the conclusion that, ultimately, petitioner's challenge on appeal would have failed.

[6] Likewise, in *Dávila-Reyes*, while the opinion withdrawn by the *en banc* order, 23 F.4th 153 (1st. Cir. 2022), could have been favorable to petitioner (but being withdrawn, is no longer so), it was also issued after the petitioner filed his appeal brief, on September 3, 2019.

Petitioner's appellate counsel's decision not to challenge the constitutionality of MDLEA on appeal is entitled to a presumption of reasonableness given the state of the law at the time. *See Strickland* at 466 U.S. at 689 ("…[E]very effort [should] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Petitioner has not rebutted that presumption.

Therefore, petitioner's appellate counsel was not ineffective for choosing to not pursue this challenge on appeal. Petitioner's claims fail under either *Strickland* prong for much the same reasons, as described above. As a result, petitioner's objections as relate to his appellate counsel's failure to challenge the constitutionality of MDLEA on appeal are therefore **OVERRULLED**.

## IV.   Certificate of Appeal

Rule 11(a) of the Rules Governing § 2255 Proceedings provides that a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court **DENIES** the COA because no such showing was made.

## V.   Conclusion

For the above reasons, the R&R's findings and conclusions are **ADOPTED** in accordance with the above review and analysis. The motion to vacate at ECF No. 1 is DENIED.

The Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 14th day of July, 2023.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**